UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:12-cv-23368-XXXX

SHELLY HILL,

      Plaintiff,

v.

ROSS DRESS FOR LESS, INC. d/b/a DD'S
DISCOUNTS,

      Defendants.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant, ROSS DRESS FOR LESS, INC. d/b/a DD'S DISCOUNTS (hereinafter Defendant or "ROSS"), by and through undersigned counsel and in accordance with the applicable Federal Rules of Civil Procedures and Local Rules of this Court including Rule 56 of the Federal Rules of Civil Procedures, hereby moves for summary judgment in its favor and over and against Plaintiff on the basis that there are no genuine issues of material fact and that Defendant is entitled to summary judgment as a matter of law, and in furtherance thereof Defendant states:

### I. INTRODUCTION

Plaintiff alleges that on or about March 16, 2012, she was on the premises of a DD's Discount store located at 21401 Northwest 2nd Avenue, Miami, Florida when she "slipped and fell" on "loose plastic" located on the floor.[1] *Exhibit A*, Plaintiff's deposition transcript. Plaintiff claims that she walked by an area at the end of the "home section" and fell on the alleged loose plastic near the rug merchandise. The ROSS employee assigned to the "home section," Bianca

---

[1] Second Amended Complaint ¶ 9. [D.E. 17].

Deler, testified that she inspected the subject area approximately ten minutes prior to the incident and did not observe the alleged loose plastic or any other hazardous condition on the floor. *Exhibit B*, deposition transcript of Bianca Deler. Furthermore, there was an additional ROSS employee, Charles Lewis, who coincidentally was in the subject area assisting a customer approximately ten to fifteen minutes before the incident. Mr. Lewis testified that he inspected the floor area approximately ten to fifteen minutes before the incident, including correcting and remedying the hazardous placement of certain rugs that were hanging off the shelf and onto the floor, and he did not observe the loose plastic or any other hazardous condition on the floor following his remedial work in the subject area. *Exhibit C*, deposition transcript of Charles Lewis.

Even assuming the alleged loose plastic existed and/or caused Plaintiff's fall, which this Defendant adamantly denies, the hazardous condition (Plaintiff really could not identify exactly what type of loose plastic was on the floor either in her Second Amended Complaint or during her deposition testimony) arrived on the floor at some point following Mr. Lewis and Ms. Deler's inspection of the subject floor area; this time period would have been a maximum of ten minutes according to Ms. Deler's testimony. Conversely, Plaintiff testified that she does not know when the alleged loose plastic arrived on the floor, how long it had been on the floor, how it arrived on the floor, or how long it had been since a ROSS employee inspected the subject area prior to the incident.

Ten minutes is not sufficient time for a store such as retailer ROSS to remedy an alleged transitory foreign substance on the floor even assuming in the first instance that it indeed existed. In short, summary judgment should be granted for ROSS because, assuming Plaintiff's testimony is 100% accurate (which ROSS denies), ten minutes is still an insufficient amount of time to find a retailer negligent under Florida law. There is no negligence by a retailer for failing to remedy a

transitory foreign substance on the floor within ten minutes of it occurring.  Most cases require at least fifteen to twenty minutes, minimum, for a retailer to be held negligent for failing to remedy a transitory foreign substance on a floor.

The main argument here which justifies as a matter of law summary judgment in favor of ROSS is that accepting the testimony of Ms. Deler and Plaintiff as true, ten minutes is not an unreasonable amount of time and is insufficient to state a viable claim of negligence against a retailer. Moreover, Plaintiff cannot satisfy Florida's new premises statute, Section 768.055. Plaintiff cannot establish by any of her own testimony how long the alleged hazardous condition had been on the floor, when it arrived, how it arrived, how ROSS was negligent in failing to remedy it, or any other facts about the alleged foreign substance as required by Section 768.055. There is simply no evidence of negligence by ROSS.

## II. CONCISE STATEMENT OF MATERIAL FACTS

1.  Plaintiff alleges that on or about March 16, 2012, she was on the premises of a DD's Discount store located at 21401 Northwest 2nd Avenue, Miami, Florida when she fell on loose plastic located on the floor.

2.  Plaintiff claims that she walked by an area at the end of the "home section" and fell on the loose plastic near the rug merchandise.

3.  The ROSS employee assigned to the "home section," Bianca Deler, testified that she inspected the subject area approximately ten minutes prior to the incident and did not observe the alleged loose plastic or any other hazardous condition on the floor.

### ROSS Employee Bianca Deler's Testimony

Q: So you don't know one way or the other whether or not there was something on the floor or not?

A: Or wasn't, no. It probably wasn't because I had just passed there, so it probably wasn't.

Q: When you say you just passed there, when had you just passed there?

A: Probably I'd say ten -- ten minutes.

Q: And what makes you say that?

A: Because it's my area, so I'm sure I did.
*Exhibit B*, deposition of Bianca Deler, pg 21, ln 3-14.

Q: Okay. And would you normally walk around that area if --

A: Yes.

Q: -- if you were not going to be on break?

A: Yeah.

Q: How often?
*Exhibit B*, deposition of Bianca Deler, pg 22, ln 19-25.

A: Probably every -- I could give you every ten minutes.

Q: And what would make it be every ten minutes?

A: What would make it be every ten minutes?

Q: Yes.

A: Cause I'm in charge of that section, so I would just walk it no matter what.
*Exhibit B*, deposition of Bianca Deler, pg 23, ln 1-9.

Q: How many minutes does it take you to walk that area?

A: Probably like two minutes.

Q: Probably about two minutes. So you work from -- a shift from 3:00 p.m. to 11:00 p.m., and you think you walked through that entire area –
*Exhibit B*, deposition of Bianca Deler, pg 23, ln 19-25.

A: In ten minutes -- I mean, two minutes, I'm just saying walking it, or actually what?

Q: Inspecting the ground, you think you do that six times an hour or so?

CASE NO. 1:12-cv-23368-XXXX

A: Six times, probably. I wouldn't say six. Maybe six, yeah.
*Exhibit B*, deposition of Bianca Deler, pg 24, ln 1-7.

Q: Do you actually sign off on anything that says that you've walked around every ten minutes?

A: No.

Q: If you do an inspection and you find something on the floor, do you note that you found something on the floor or you just clean it up?

MR. GARCIA: Form.

A: Just clean it up.
*Exhibit B*, deposition of Bianca Deler, pg 27, ln 6-15.

Q: Okay. And you feel that every day that you are at work, that you walk around the area you're assigned to every ten minutes without fail to look for things on the floor?

MR. GARCIA: Form.

A: I think so.
*Exhibit B*, deposition of Bianca Deler, pg 28, ln 6-11.

Q: Not your employer necessarily, but DD's Discounts has told us all employees are instructed to inspect the floor for hazardous conditions and remedy any hazardous conditions. Have you ever been told that before?

A: Yes.

Q: Was that the policy of the store on March 16, 2012?

A: Yes.

Q: And the term employees, on March 16, 2012 who would the employees be that are supposed to inspect the floor?

A: Every employee. The sales floor, cashier, even managers.
*Exhibit B*, deposition of Bianca Deler, pg 35, ln 10-25.

Q: Prior to Ms. Hill's fall on March 16, 2012, do you recall picking up anything on any of your inspections from the floor?

A: I don't remember that.

CASE NO. 1:12-cv-23368-XXXX

Q: Don't remember. Have you ever conducted an inspection when you walked through an area at DD's and there was something on the floor and you missed it and somebody had to come and tell you that you should have picked something up or you should have seen it?

A: No.

Q: No, have you ever yourself done an inspection and then gone back a little while later and thought that maybe you had missed something previously?

A: I didn't miss it, they probably put it on the floor after I passed it.

Q: Right, but my question is more tailored to you never saw something later and thought I missed this before?

A: No, no.
*Exhibit B*, deposition of Bianca Deler, pg 48, ln 3-25.

BY MR. GARCIA:

Q: As far as you know, this incident happened near where the rugs are placed on shelves?

A: Yes.

Q: And these are big rugs -- or you can tell me how big the rugs are, if you know.

A: They are taller than all of us in here.

Q. That's your area?

A. Yes.

Q: And you walk that at least every ten minutes?

A: Yes.

Q: And you didn't see anything on the day of Ms. Hill's fall in that particular walkway?

A: No.

Q: Is there any plastic on those shelves that hold those rugs and other items?

CASE NO. 1:12-cv-23368-XXXX

A: No.

Q: What's that section of the store called? What is it?

A. Home.
*Exhibit B*, deposition of Bianca Deler, pg 66, ln 16, - pg 67, ln 13.

Q: Isn't it fair that that walkway is being walked by an employee, to your knowledge, about every two or three minutes, if not sooner or quicker?

A: Yeah.

Q: So it's constantly being walked and looked -- the floor is being looked at almost constantly by fellow employees, if not yourself?

A. Yes.
*Exhibit B*, deposition of Bianca Deler, pg 68, ln 16-25.

Q: And on the worst case scenario, you walk it and inspect it every ten minutes?

A: Yes.

Q: Is that true?

A: True.

Q: Do you have any knowledge of knowing about anything being on the floor in terms of plastic, whether it's a hanger, or any of these plastic items that you see in these pictures, being on the floor prior to Ms. Hill's fall?

A: No.

Q: If you were to have seen it, what would you have done, any of these types of items or any other type of plastic?

A: Pick it up.
*Exhibit B*, deposition of Bianca Deler, pg 69, ln 1-16.

4. Furthermore, there was an additional ROSS employee, Charles Lewis, who coincidentally was in the subject area assisting a customer approximately ten to fifteen minutes before the incident. Mr. Lewis testified that he inspected the floor area ten to fifteen minutes prior to the incident, including correcting and remedying the hazardous placement of certain rugs

that were hanging off the shelf and onto the floor, and he did not observe the loose plastic or any

other hazardous condition on the floor following his remedial work in the subject area.

### ROSS Employee Charles Lewis' Testimony

Q: Well, but that's after she fell. Before you knew she fell, when was the last time you had been in that area and inspected the floor?

A: Okay. About ten, 15 minutes before.
*Exhibit C*, deposition of Charles Lewis, pg 39, ln 4-8.

Q: You walked past it or through it?

A: I walked past it.

Q: And do you remember specifically looking at the area where she fell?

A: Yes, sir.

Q: Or you just happened to look near it?

A: Yes, sir, I do. I looked at the area [...] So, in essence, I walked directly past the end cap shelf that Ms. Hill had fell by. Directly past it.
*Exhibit C*, deposition of Charles Lewis, pg 40, ln 13-20, pg 41, ln 1-2.

Q: Did you walk the entire rug aisle or just the portion toward the top where you entered it?

A: I walked -- when you say walk the entire rug aisle, the section right in there that you are pointing at, it would be a slender section where a lot of rugs were placed in one aisle on one side and some on the other.

Q: Okay. Where around here did you see Ms. Hill on the floor?

A: Right in here.

Q: Right in here.

A: Along the end part of the aisle.

Q: And that's where part of the area where you had been talking with that customer?

A: Yes. Part of the area where I had been talking to the customer and the customer placed the rug on the floor, which led into me looking around the floor in every area for a potential safety hazard. And the customer lifted the rug off the floor, and as they lifted the rug off the floor, once again, I searched the whole floor and moved back some rugs, and a couple of fixtures, observed the floor, seeing no safety hazards, and continued walking my regular path.
*Exhibit C*, deposition of Charles Lewis, pg 46, ln 10-25, pg 47, ln 1-12.

5.   Ms. Deler is certain the alleged loose plastic was not present on the floor when she conducted her inspection approximately ten minutes before the subject incident.

### ROSS Employee Bianca Deler's Testimony

Q: Okay. And do you think, again, assuming that Ms. Hill stepped on a piece of plastic, slipped on that plastic and fell, you don't think there is any way that it was there when you did your inspection before her fall?

A: Of course not.
*Exhibit B*, deposition of Bianca Deler, pg 49, ln 1-6.

6.   Even assuming the alleged loose plastic existed and/or caused Plaintiff's fall, which this Defendant adamantly denies, the hazardous condition arrived on the floor at some point following Mr. Lewis and Ms. Deler's inspection of the subject floor area; this time period would have been a maximum of ten minutes according to Ms. Deler's testimony. *Exhibit B*, deposition of Bianca Deler, pg 49, ln 1-6.

7.   Plaintiff testified that she does not know when the alleged loose plastic arrived on the floor, how long it had been on the floor, how it arrived on the floor, or how long it had been since a Ross employee inspected the subject area prior to the incident.

### Plaintiff's Testimony

Q: With respect to the policies that DD's has for store maintenance, you don't know anything about that, right?

A: No.

Q: You don't know anything about how often employees have to walk certain aisles, correct?

A: No.

Q: You don't know anything about how often employees have to clean, meaning, with a broom or with their hands items from the floor in terms of the schedule, you don't know anything about that, correct?

A: No.

Q: You don't know anything about when the store opens and when it closes, correct?

A: No.

Q: You don't know anything about where employees are assigned in different departments of the store, correct?

A: No.

Q: You don't know how often the manager or the loss prevention officer have to walk around the store's perimeter and in between certain aisles, correct?

A: No.
*Exhibit A*, deposition of Plaintiff, pg 34, ln 5-25, pg 57, ln 1-2.

Q: Now, when you're walking in those aisles, regardless of which one it is, you don't know or have any knowledge of which that aisle was last inspected or cleaned by an employee in relation to when you were walking on it, correct?

A: No.

Q: You don't know when -- if-- even the aisle that you eventually fell on -- and we're going to get to that just in a few minutes -- you don't know when that specific aisle was last inspected or cleaned, right?

A: No.

Q: In relation to when you fell, you don't have any knowledge about that, correct?

A: No.
*Exhibit A*, deposition of Plaintiff, pg 59, ln 11-24.

CASE NO. 1:12-cv-23368-XXXX

Q: Okay. Here, in this case -- and we're going to talk about this - you say you fell because of a lose piece of plastic, like a clear piece of plastic, correct?

A: Yes.

Q: You don't know when that plastic arrived to the floor in relation to when you claimed you fell, correct?

A: No, I don't.

Q: You don't know how it got there, correct?

A: No.
*Exhibit A*, deposition of Plaintiff, pg 60, ln 1-10.

Q: Okay. You said initially - in the first wave of answers, you said, "I don't know how long the plastic was on the floor." That's correct, right, before you fell, correct?

A: Yes.

Q: "I am not sure how plastic got on the floor or where if came from," Correct?

A: Yes.

Q: So, you don't know if it came, like, from another customer a few seconds or a few minutes before you walked by there, correct?

A: I don't know.

Q: Or you -- or how it got there at all, it could have just come from -- who knows where -- you don't know how it got there, right?

A: No.
*Exhibit A*, deposition of Plaintiff, pg 61, ln 11-25, pg 62, ln 1.

Q: In fact, with respect to even other items that would potentially be on the floor, you don't know how they got there either, correct?

A: No.

Q: Or how long they had been on the floor, regardless of what they are or where in the store, correct?

A: No.

Q: Okay. All right. You don't know, the aisle that you eventually fell on, you don't know who cleans that in respect to which employee has a duty to clean that or inspect it, correct?

A: No.

Q: Or when they're supposed to do that in relation to when you fell or their schedule on cleaning and inspecting that aisle, correct?

A: No.

Q: You don't know, in relation to when you fell, when the last time was that somebody walked by that same area that you fell to look at it in terms of employee, correct?

A: No.
*Exhibit A*, deposition of Plaintiff, pg 62, ln 1-23.

Q: And then you wrote, "Defendant permitted plastic to lie on its floor and failed to work." And I asked you before, you didn't have any knowledge of how the plastic got there or when it was there or how it got there in relation to when you fell, right?

A: Right, correct.

Q: So, you can't really write "permitted" – the word "permitted" is what you used, That means that we left it there on purpose. You don't have any knowledge that that actually happened, right?

A: No.

Q: So, if another customer went by there a minute before you walked by there and it blew off some other merchandise and came on the floor -- this clear piece of plastic is what I'm focusing on -- you don't know if that happened, right?

A: No.

Q: That wouldn't have been something we permitted, correct?

A: Correct.

Q: Okay. Now, when you say that we failed to warn you, if we don't know about something, we can't warn you somebody about it and nobody can do that, right? You have to answer the question.

A: Correct.

Q: Okay. All right. Now, the other statement, if you go down, still in answer to No. 10, it's like the third - it's the fourth line down on your supplemental answers and on your regular answers, it's still like the fourth line down. It says, "Defendant failed to timely and adequately remove plastic from its floor." Again, when I asked you before, you don't know when the plastic got there in relation to when you fell, correct?

A: Correct.

Q: So, you don't know, when you knew about it, to have an opportunity to go and pick it up, right?

A: Correct.

Q: So, when you write "failed to timely and adequately," that's not exactly correct either or accurate, correct?

MR. BLUESTEIN: Form.

A: To - that's wrong. I - I think it would be correct. It --

Q: (by Mr. Garcia): Do you understand what I'm saying? If you said before -- you even said in answers down on the page 10 to 11, you don't how the plastic got there or when it got there in relation to when you fell?

A: Correct.

Q: So, you can't really say in good faith that we failed to timely pick it up if we don't know how long it had been there, right?

MR. BLUESTEIN: Form.

A: Correct.

Q: (By Mr. Garcia) Okay. And then you write, "When defendant knew or should have known." You don't know what somebody else knows or doesn't know, right?

A: Correct.

Q: Including DD's, you don't know what DD's knows or doesn't know. So, that's not exactly accurate when you write that "when you -- or did or should have known something," correct?

A: Correct.

CASE NO. 1:12-cv-23368-XXXX

*Exhibit A*, deposition of Plaintiff, pg 67, ln 25, pg 68-69, ln 16.

Q: Okay. All right. Now, the other one here. The last -- it's the sentence before the last, same questions. You write, "Defendant did not clean up the plastic in a timely manner," You don't know when the plastic was there or how it got there, correct?

A: No, I don't.

Q: So, you don't know if we were to have known about it that we didn't clean it up in a timely manner. You don't know if that's – that's not exactly accurate, correct?

MR. BLUES'IEIN: Form.

A: No No.

Q: (By Mr. Garcia) Okay. Now, you don't have any knowledge or evidence that we knew that the plastic was there and didn't pick it up, correct?

A: No.
*Exhibit A*, deposition of Plaintiff, pg 70, ln 1-16.

Q: Okay. And again, in answer to 25, yon actually admit you don't know how long the plastic was on the floor before you fell, correct?

A: Correct.

Q: And you can't recall exactly where you were looking at, at each interval of time before you fell, correct?

A: Yes.

Q: Or at the specific locations before you fell, correct?

A: Correct.

Q: And you're not sure how the plastic got on the floor, correct?

A: Correct.

Q: Or where it came from, correct?

A: Correct.
*Exhibit A*, deposition of Plaintiff, pg 162, ln 5-20.

## II. MEMORANDUM OF LAW

### A.    Summary Judgment Standards

Summary judgment will only be granted where there is no dispute as to material facts such that the resolution of the case is solely dependent upon the applicable law. Specifically, pursuant to the Federal Rules of Civil Procedure, a motion for summary judgment should only be granted "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled judgment as a matter of law." Fed. R. Civ. P. 56(C); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2509-2510 (1986).  However, an issue of fact is deemed "material" only if it "might affect the outcome of the suit under governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *See Allen v. Tyson Foods, Inc.*, 121 F. 3d 642, 646 (11th Cir. 1997).  A material issue of fact is "genuine" if the record taken as a whole could lead a reasonable trier-of-fact to find for the nonmoving party.  *See Allen, supra.*

The party moving for summary judgment initially bears the burden of establishing the absence of a genuine issue as to any material fact.  *See Celotex Corp.*, 477 U.S. at 322-323, 106 S. Ct. at 2552-2553; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970).  When a motion for summary judgment is filed and supported by the movant, the procedural rules require the non-moving party to set forth facts demonstrating that genuine issues of material fact remain for trial.  *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-587, 106 S. Ct. 1348, 1355-1356 (1986).

In this case there exists no bona fide dispute of any genuine material facts and summary judgment is therefore appropriate.  More specifically, summary judgment is warranted because there is **no admissible evidence of any notice [either actual or constructive] by ROSS of any**

**hazardous condition or loose plastic** on the subject floor area which ROSS should have remedied and Plaintiff has failed to meet her burden under Florida's new premises statute, Section 768.0755, Florida's Transitory Foreign Substance Statute. "The failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial and requires a court to grant a motion for summary judgment." *Espinoza Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1359 (S.D. Fla. 2008)(emphasis supplied).

     **B.**    **Basic Premises Law**

Under Florida law "the duty of a landowner to a business invitee is to maintain the premises in a reasonably safe condition and to warn the invitee of latent perils which are known or should be known to the owner but which are not known to the invitee or which, by the exercise of due care could not be known to him." *Crawford v. Miller*, 542 So. 2d 1050, 1051 (Fla. 3rd DCA 1989); *See Espinoza Ugaz v. Am. Airlines, Inc.,* 576 F. Supp. 2d 1354, 1367-1368 (S.D. Fla. 2008)("To show a breach of the duty to protect, a plaintiff must show that a defendant failed to maintain its property in a reasonably safe condition, or that it failed to warn the plaintiff of a concealed peril of which it either knew or should have known and which could not have been discovered by the plaintiff through the exercise of ordinary care. Regarding the warning requirement, a defendant must give timely notice of latent or concealed perils which are known or should be known. However, even if a condition qualifies as dangerous under the standard, the plaintiff still has to show actual or constructive notice that the defendant knew or should have known of it. The plaintiff bears the burden of proving that the defendant was negligent, and to that end, the plaintiff must generally prove that the owner of the premises had actual or constructive notice of the dangerous condition"); *See Aventura Mall Venture v. Olson*, 561 So. 2d 319, 320 (Fla. 3rd DCA 1990)(same).

Here, there is no evidence of any actual or constructive notice of any dangerous condition with the subject floor area, including no evidence that Defendant knew or should have known about the alleged loose plastic condition. In this regard, this case is akin to *Delgado v. Laundromax, Inc.,* 65 So. 3d 1087 (Fla. 3rd DCA 2011) where a claimant stated she slipped and fell on what she thought must have been water, but there was no evidence demonstrating actual or constructive notice. The Court held:

> "Laundromax has shown that under the applicable law it did not have either actual or constructive notice of the spill, and Delgado failed to present any evidence that Landromax employed a negligent mode of operation that led to her injury. Consequently, there are no facts upon which a jury could conclude that Laundromax acted negligently by failing to exercise reasonable care in the maintenance, inspection, or repair of its business premises. Accordingly, we conclude that the trial court correctly found that Laundromax was entitled to judgment as a matter of law." *Id* at 1091.

### C.   <u>Ross Did Not Breach Its Duty To Maintain The Premises; Ten Minutes Is Not Negligence</u>

The record is also devoid of any evidence that Defendant failed to use reasonable care in maintaining the subject premises in a reasonably safe condition. Under Florida law, a landowner is only required to exercise ordinary care in maintaining its premises. *Emmons v. Baptist Hosp.,* 478 So. 2d 440, 442 (Fla. 1st DCA 1985)(citing *Hylazewski v. Wet 'N Wild, Inc.*, 432 So. 2d 1371, 1372 (Fla. 5th DCA 1983)). "Perfection of conduct is humanly impossible, and the law does not exact an unreasonable amount of care from anyone. The degree of care required is ordinary and reasonable care." *Emmons*, 478 So. 2d at 443 (citing 38 Fla Jur 2nd, Negligence, § 20; *Cassel v. Price,* 396 So. 2d 258 at 265). A landowner is not required to exercise control over a business invitee or the premises "so as to be an insurer of his safety." *Emmons*, 478 So. 2d at 442 (citing *Warner v. Florida Jai Alai, Inc.,* 221 So. 2d 777 (Fla. 4th DCA 1969); *Harvey v. Bryant,* 238 So. 2d 462 (Fla. 1st DCA 1970); *Partelow v. Edgar*, 219 So. 2d 72 (Fla. 4th DCA 1969))(emphasis original); see also *St. Joesph's Hosp. v. Cowart,* 891 So. 2d 1039 (Fla. 2d DCA

1995); *Haynes v. Lloyd,* 533 So. 2d 944, 946 (Fla. 5th DCA 1988)("An owner of real property is not an insurer of the safety of persons on the property, nor is the owner strictly liable, or liable per se without fault, for injuries resulting from dangerous conditions on owned property."). The complained of loose plastic on the floor could not have existed for more than ten minutes. In addition, there is no record evidence establishing Plaintiff's claims that Defendant failed to use ordinary care in maintaining its premises or had any notice about any hazardous loose plastic condition. As such, summary judgment should be granted in favor of Defendant.

Florida law is clear that ten minutes of time or less to remedy a floor condition, as testified by Ms. Deler, is insufficient as a matter of law to charge a defendant with negligence. *See Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 864 (Fla. 3rd DCA 1972)(period of time the substance remained on the floor, **_at least_** fifteen to twenty minutes, to be sufficient for defendants to be charged with knowledge of the condition and a reasonable time in which to correct it; and the established slip and fall rule in Florida is that if a dangerous condition exists on the floor in an area open to the public, *the owner or occupant of the property will not be held liable for ensuing injuries if the record fails to show how the condition was created, the length of time the condition existed before the accident or whether the store or some other agency was responsible for the condition*)(emphasis supplied); *See Little v. Publix Supermarkets, Inc.*, 234 So. 2d 132, 134 (Fla. 4th DCA 1970(same - need **at least fifteen to twenty minutes** of time to charge defendant with knowledge); *See Publix Super Markets, Inc. v. Schmidt*, 509 So. 2d 977 (Fla. 4th DCA 1987)(no proof that substance (which was never discovered) had been on the floor long enough to constitute constructive notice).

Indeed, in *Gaidymowicz v. Winn-Dixie Stores*, 371 So. 2d 212 (Fla. 3rd DCA 1979), the court noted that the dangerous condition on the floor must exist for a sufficient length of time to charge the defendant owner with constructive knowledge and held that a little over a minute of

actual notice is insufficient. *Id.* at 213-214.   The Court held that "Winn-Dixie did not have sufficient opportunity to correct the dangerous condition and, therefore, could not be liable on the basis of actual notice". *Id.*   The court further found that Mrs. Gaidymowicz failed to present sufficient evidence as to the length of time the liquid was on the floor to charge Winn-Dixie with constructive knowledge of the condition, and reasonable time to correct it. The evidence showed that the store manager had been down the aisle only five minutes before the customer's fall, and there was nothing there at that time. **Five minutes was not deemed sufficient time to correct the dangerous condition.** *Id.* The *Gaidymowicz* reasoning applies in full force in this case.

Here, Plaintiff clearly stated under oath that she does not know how long the loose plastic was located on the floor and Ms. Deler testified that she inspected the subject floor area ten minutes prior to the incident and the loose plastic was not on the floor. These facts warrant summary judgment for ROSS as a matter of law. Ten minutes of time of an alleged failure to remedy a floor simply does not constitute negligence under Florida premises law.

       **D.**      **<u>Plaintiff Fails To Satisfy Her Burden Under Florida Statue Section 768.0755</u>**

In July of 2010 the Florida Legislature passed a new premises liability statute for falls caused by transitory or foreign substances, specifically Section 768.0755. The statute applies herein because Plaintiff is alleging a transitory foreign substance in the form of loose plastic was on the floor and caused her fall. Florida Statute Section 768.0755 provides as follows:

> 768.0755. Premises liability for transitory foreign substances in a business establishment.—(1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
>
> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or

CASE NO. 1:12-cv-23368-XXXX

> (b) The condition occurred with regularity and was therefore foreseeable.
>
> (2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

This statute places the burden of proof on Plaintiff to prove that the business proprietor or operator had actual or constructive knowledge of the dangerous condition causing the alleged slip and fall. The Plaintiff must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge can be proven by circumstantial evidence showing that the dangerous condition existed for such a length of time that in the exercise of ordinary care the business establishment should have known of the condition or alternatively that the condition occurred with regularity and was therefore foreseeable. Here, Plaintiff totally fails to provide any evidence of actual notice by ROSS. Similarly, Plaintiff totally fails to provide any evidence of constructive knowledge of any transitory substance on the floor. Because Plaintiff fails to satisfy Florida's new premises liability statute, Section 768.0755, summary judgment must be granted as a matter of law in favor of Ross.

## III. CONCLUSION

For all the foregoing reasons and based upon the cited authorities including applicable premises and Florida and Federal law, Defendant respectfully requests that this Motion be Granted; that summary judgment be entered in its favor and over and against Plaintiff; that Plaintiff take nothing by this case and that this case be closed and dismissed with prejudice; and for such further and other relief as the Court deems just and proper.

CASE NO. 1:12-cv-23368-XXXX

Respectfully submitted,


s/ Michael A. Garcia
Michael Alexander Garcia
Fla. Bar No. 0161055
Email: mgarcia@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Espirito Santo Plaza, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

CASE NO. 1:12-cv-23368-XXXX

**CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2013, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/ Michael Alexander Garcia</u>
Michael Alexander Garcia

CASE NO. 1:12-cv-23368-XXXX

## SERVICE LIST

CASE NO. 1:12-cv-23368-XXXX

Eric Bluestein, Esq.
Freidin Dobrinsky Brown & Rosenblum, P.A.
2 South Biscayne Boulevard
Suite 3100
Miami, Florida 33131
E-Mail: ebluestein@fdlaw.net;
yfernandez@fdlaw.net
Telephone: (305) 371-3666
Facsimile: (305) 371-6725